Charles Robinowitz
Law Office of Charles Robinowitz
OSB No. 691497
1211 SW Fifth Ave., Suite 2323
Telephone: 503-226-1464
Facsimile: 503-226-6456
Email: chuck@crlawoffice.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION (3)

| | |
|---|---|
| STEVEN M. NELSON, | No. 3:19-cv-01761-HZ |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES OF AMERICA, by and through the NATIONAL OCEANIC and ATMOSPHERIC ADMINISTRATION | |
| Defendant. | Date: May 10, 2021<br>Time: 3:00 p.m.<br>Courtroom: 15A<br>Honorable Marco A. Hernandez |

### Facts of Case

The plaintiff was injured as he was leaving the National Oceanic and Atmospheric Administration ("NOAA") vessel OSCAR DYSON when it was docked in Newport, Oregon for maintenance on November 2, 2017. The plaintiff was a diesel mechanic onboard to maintain and repair the vessel's diesel engines. As he was leaving the vessel, the gangway collapsed in the middle onto the dock. He fell 10 to 12 feet, injuring his left

Page 1 – PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR 97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

1 arm and shoulder. Decl. of Steven M. Nelson. *See also* exhibits 1 and 2 to Nelson Decl.

2     The cause of the collapse of the gangway was the failure of the welds on each side
3 of the hinge plate to properly fuse with the lower and the upper sections of the gangway.
4 Because the welds had root fractures initially and did not fuse properly, the fractures
5 gradually expanded with normal use until the plaintiff was walking on the gangway, and
6 became the "straw that broke the camel's back." Daniel Van Domelen decl. Exhibit 1 to
7 the plaintiff's declaration shows part of the collapsed gangway on the dock and the part
8 still connected to the vessel. Nelson decl.

9     The defendant claims there was nothing reasonable it could have done to have
10 prevented the collapse of the gangway and the plaintiff's injury. It contends that normal
11 inspections of the gangway each time before its crew deployed it did not reveal any
12 defects in the welds, and it is impossible to detect failures in welds until they actually fail.
13 The declarations of the plaintiff's experts Daniel Van Domelen and Captain Joseph A.
14 Derie dispute this.

15     The defendant also argues it had no duty to load test the gangway at any time to
16 make sure it was fit to support a required weight. Captain Derie also disputes this.

**Legal Standards**

17     The plaintiff is basing his claim for personal injuries on negligence under 33
18 U.S.C.§ 905 (b) of the Longshore and Harbor Workers' Compensation Act; not on
19 unseaworthiness. His claim is that the ship's crew should have seen by reasonable

Page 2 – PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

inspection before it deployed the gangway on October 24, 2017, that there were cracks in the welds fusing the hinge plate to the upper section of the gangway. These cracks would have required an inspection and repair by a qualified welder.

Under *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981), a vessel owes others on the ship a duty to exercise due care under the circumstances. *Scindia* involves three types of duties: a turnover duty, a duty of active involvement and a duty to intervene. But it is more accurate to view the ship's duty in the present case as Justice Brennan described it in his brief concurrence in *Scindia.* This is a duty to exercise reasonable care under the circumstances. 451 U.S. at 179. This case does not involve a turnover to a stevedore or other contractor or a duty to intervene. It involves a failure to reasonably inspect and maintain the gangway.

The gangway is exclusively under the maintenance and control of the vessel, and it has the sole responsibility to maintain it in a safe condition. Derie decl.; s*ee also Masinter v. Tenneco Oil Corp.*, 867 F.2d 892 (5th Cir. 1989), *modified*. 929 F.2d 191 (1991). The ship had complete control of the gangway. It had a duty to make sure it was safe and properly maintained, and a duty to Steve Nelson to use reasonable care to avoid exposing him to a dangerous condition.

The legal test for the defendant's motion for summary judgment is whether there is a genuine issue of material fact that the ship exercised due care in the maintenance of its gangway, and whether due care would have prevented the plaintiff's injuries. In

Page 3 – PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

evaluating a motion for summary judgment, the court must view all disputed facts in favor of the non-moving party, who is the plaintiff in the present case. *Scindia, id.* at 159; *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962). Whether to grant a motion for summary judgment depends on the particular facts of the case. *First Nat. Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968).

Where a case involves conflicting expert opinions, courts should be slow to grant motions for summary judgment. *See Anthony P. Miller, Inc. v. Wilmington Housing Authority,* 179 F. Supp 199, 205 (D.C. Del. 1959). Instead, a factfinder should evaluate the credibility of the witnesses, listen to the facts of the case, and then decide who is more credible after a trial.

The Supreme Court has held that a trial court should grant summary judgment only where it is quite clear what the truth is, and where no genuine issue remains for trial. The purpose of Rule 56 is not to cut litigants off from their right to trial, if they have issues to try. *Poller, supra* at 467.

The present case involves a major factual dispute: whether the defendant should have known that the welds fusing the hinge plate to the bottom of the upper section of the gangway were defective before the crew deployed the gangway on October 24, 2017.

**Classic Issues of Fact**

This is a classic case of disputes about genuine issues of material facts. The major material fact is whether the ship should have, in the exercise of reasonable care,

Page 4 – PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

discovered the cracks in the weld before they failed and the gangway collapsed. The defendant's experts state the failures of the welds from the hinge plate to the upper section of the gangway were due to fractures in the welds at the roots. It maintains there was no way, using reasonable care, to detect these until after the gangway collapsed. It states that root fractures are not reasonably apparent on a visual inspection until they fail, and the vessel had no duty to load test the gangway to its maximum weight at any time.

The plaintiff's experts disagree. Daniel Van Domelen stated that root fractures expand to external cracks before they fail under normal loads. The defendant through a visual inspection of the hinge plate should have seen cracks in the weld caps at each end well before October 24, 2017, which is when its crew should have inspected the welds. Van Domelen decl.

The defendant admits its crew should inspect the gangway on the vessel before deploying it. The ship docked at Newport, Oregon on October 24, 2017, nine days before the gangway broke. Mr. Van Domelen's opinion conflicts with Rita Kirchhofer, the defendant's welding expert. He said that before failure of the welds on both ends of the hinge plate, external cracks would have developed that would have been visible on inspection before October 24, 2017. Van Domelen decl.

Captain Joseph Derie, a maritime expert, stated that the crew had a duty to look for cracks in the external welds when the gangway was stowed on the vessel before deploying it. If they saw any cracks, the ship should have had a qualified welder inspect

Page 5 –   PLAINTIFF'S MEMORANDUM OF POINTS AND
           AUTHORITIES IN OPPOSITION TO DEFENDANT'S
           MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR 97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

1  and repair them. The ship should not use the gangway until a welder repairs the defective

2  weld. He also stated that the crew would be able to look at the welds on the underside of

3  the gangway, including those connecting the hinge plate to both sections of the gangway,

4  before deploying it. Derie decl.

5

6       Mr. Van Domelen and the plaintiff saw cracks in a weld in exhibit 7 to the

7  plaintiff's declaration. The plaintiff looked at the broken gangway the night it collapsed

8  and the next day and took pictures of it. Exhibit 7 to the plaintiff's declaration is a weld

9  on the hinge plate which did not fail. Based on the black marks on the weld which both

10 the plaintiff and Mr. Van Domelen said were cracks, the defendant should have noticed

11 cracks in the welds long before their failures. Exhibit 6 to the plaintiff's declaration also

12 shows a solid weld without cracks. Daniel Van Domelen feels cracks in the welds to the

13 hinge plate that failed should have been visible before the crew deployed the gangway

14 on October 24, 2017. Nelson decl.; Van Domelen decl. Once the cracks were visible, the

15 defendant should have arranged for a qualified welder to inspect and repair the weld

16 before someone was hurt. This would have complied with due care. Derie decl.

17      Captain Derie stated that the ship should have trained its personnel to carefully

18 inspect the underside of the gangway for cracks when it is on the vessel before they

19 deploy the gangway. This includes the hinge plate which supports the gangway by

20 holding up its two main sections. If any cracks were visible, it should have had a

21 qualified marine welder inspect and repair the weld. It should also have obtained a

Page 6 –   PLAINTIFF'S MEMORANDUM OF POINTS AND
           AUTHORITIES IN OPPOSITION TO DEFENDANT'S
           MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR   97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

certificate that the manufacturer of the gangway had load-tested the gangway before delivery, and the vessel should load test it every five years thereafter. Derie decl.

The defendant has no information of who built the gangway, when they built it or who welded the hinge plate at the time of fabrication. It has no certificate of any loading-testing before it began using the gangway, and it never load-tested it after using the gangway. Robinowitz decl. exhibit A. In short, the vessel has no history of the gangway, and it never load-tested it or made sure its manufacturer did so.

The question before the court is whether the plaintiff's or the defendant's experts are more credible. Because the court must resolve all disputed facts in favor of the plaintiff, it should deny the motion for summary judgment. In resolving the disputed facts, the court must find the defendant should have discovered the broken welds at each end of the hinge plate before they failed. It also should have load-tested the welds every five years, and should have had the gangway load-tested by the manufacturer before delivery. A load-test would have revealed the defective welds. *Scindia, supra; Poller, supra.*

**The Legal Basis to Deny Motion for Summary Judgment**

The defendant under *Scindia, supra,* has a duty to use reasonable care to maintain the gangway. Reasonable care means ordinary care under the circumstances. It means a vessel owner must take reasonable steps to inspect its equipment before allowing others

/ / / / /

Page 7 –  PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

1  to come onto the ship. *Murray v. Southern Route Maritime, S.A.,* 870 F.3d 915 (9th Cir.
2  2017).
3
4  In *Murray*, the Ninth Circuit approved a jury instruction that a vessel owner had to
5  exercise reasonable care to inspect the vessel and its equipment before turning it over to a
6  stevedore. The present case does not involve turning the vessel over to a stevedore or
7  contractor. But it does involve a duty to inspect its equipment, in the present case, a
8  gangway, so that the plaintiff could use it safely.
9
10  The plaintiff's evidence through his welding expert Daniel Van Domelen is that
11  root fractures will gradually expand within the weld as they are subject to normal
12  stresses, and will develop external cracks before failing. A reasonable visual inspection
13  should identify the external cracks, which require the ship to have a qualified welder to
14  repair.
15
16  The ship's welding expert, Rita Kirchhofer, disagreed with Mr. Van Domelen. She
17  does not feel it is possible to visually identify cracks in defective welds until they fail.
18  Exhibit 7 to the plaintiff's declaration proves she is wrong. This exhibit shows external
19  cracks in a weld attached to the hinge plate, which had not failed as of November 2,
20  2017. Van Domelen decl.; Nelson decl.
21
22  Mr. Van Domelen also stated that the welds for the hinge plate on both sides
23  where they failed also probably showed external cracks before the ship deployed the
24  gangway. For a weld to fail, the root fracture must penetrate through the weld and
25

Page 8 – PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR 97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

weaken it enough to fail. It will show cracks externally before it reaches this point. Van Domelen decl.

What probably happened in the present case is that the ship's crew was careless in inspecting the welds of the gangway when it was on the vessel's deck. Even though cracks were visible in the welds, it is easier and quicker to deploy the gangway and ignore the risk of failure.

Also, load-testing will stress a weak weld and make it visible before failure. If weak, the weld will develop external cracks and should be visible before failure. Derie decl.

The parties' marine experts disagree over whether the defendant should have load-tested the gangway before using it. Captain Derie stated reasonable care required load-testing, even for government vessels. James Dolan for the defendant disagrees. Where experts disagree over what the defendant should have done to prevent the plaintiff's injury, the courts should be slow to grant motions for summary judgement. *Anthony P. Miller, Inc., supra.*

The present case on its facts requires a trial of the issues because of the conflicts in the evidence and what the defendant should have done. For purposes of summary judgment, the court has to believe the plaintiff's version of the facts, and find that the defendant is not entitled to judgment as a matter of law.

The defendant may argue it is entitled to an order of summary judgment based on

Page 9 – PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR 97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

*Reed v. ULS Corp.*, 178 F.3d 988 (8th Cir. 1999). But it is wrong. The Eighth Circuit affirmed the district court's grant summary judgment because of its unique facts, which do not apply in the present case. While *Reed* involved a defective gangway, it was a much different type of gangway from the one in the present case.

The gangway in *Reed* had 29 steps. Each step was held in place by angle irons and pins under the gangway. As the ship is loaded and its level in the water changes, the steps on the gangway move as well to stay horizontal and level. The defect in the gangway in *Reed* was two of the pins which regulated the level of one of the steps were missing, causing the step to become vertical when the plaintiff stepped on it and caused him to fall.

The present case involves a flat surface gangway with no steps. It is really a ramp. Its defect was failures in the welds that caused a collapse of the gangway. The plaintiff has shown by expert testimony that the defendant should have known of the defective welds before they failed and before it deployed the gangway. In *Reed*, the plaintiff did not prove any duty through expert testimony. The Eighth Circuit stated:

> … Reed merely argues that ULS had a duty to conduct a more detailed inspection but provides nothing to support his argument other than evidence that a step failed and he fell.
>
> 178 F.3d at 990.

The plaintiff in *Reed* offered no evidence to show the ship failed to exercise reasonable care under the circumstances or that it should have conducted a more rigorous inspection

Page 10 – PLAINTIFF'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF
CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

Case 3:19-cv-01761-HZ    Document 25    Filed 04/01/21    Page 11 of 12

before he was hurt.

In present case, both Capt. Derie and Mr. Van Domelen stated that the defendant should have discovered the defective welds when its crew inspected the gangway before it failed. He is not relying on the fact alone that he was hurt due to the gangway's failure, as the plaintiff did in *Reed*.

Because the gangways in both cases are different and failed in different ways means the reasonable inspections are different. Because the vessel in *Reed* could not have identified the defect in the gangway before the plaintiff fell does not mean the defendant in the present case could not in the exercise of reasonable care have prevented Steve Nelson's injury.

## CONCLUSION

Because there are genuine disputes of fact about whether the defendant should have prevented the failure of its gangway before it injured the plaintiff, the court must deny defendant's motion for summary judgment.

Dated: April 1, 2021.

           /s/ Charles Robinowitz
CHARLES ROBINOWITZ, OSB #691497
Attorney for Plaintiff

Page 11 – PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com

CERTIFICATE OF SERVICE

I hereby certify that, on April 1, 2021 a true and correct copy of the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DECLARATION OF CHARLES ROBINOWITZ, DECLARATION OF STEVEN NELSON, DECLARATION OF CAPTAIN JOSEPH A. DERIE II AND DECLARATION OF DANIEL VAN DOMELEN** was served by email on the following:

ERIC KAUFMAN-COHEN
Assistant Attorney in Charge
West Coast Office
Aviation, Space & Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 36028
450 Golden Gate Avenue, Room 7-5395
San Francisco, California 94102-3463
Telephone: (415) 436-6630/Facsimile: (415) 436-6632
E-mail: eric.kaufman-cohen@usdoj.gov
Attorney for Defendant

                                         /s/ Charles Robinonwitz
                                      CHARLES ROBINOWITZ, OSB# 691497
                                      Attorney for Plaintiff