RENATA GOWIE
Assistant United States Attorney
Chief, Civil Division
1000 SW Third Ave., Suite 600
Portland, OR 97204
Telephone (503) 727-1000

BRIAN M. BOYNTON
Acting Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
ERIC KAUFMAN-COHEN
Assistant Attorney in Charge
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 36028
450 Golden Gate Avenue, Room 7-5395
San Francisco, California 94102-3463
Telephone: (415) 436-6647
Facsimile: (415) 436-6632
E-mail: eric.kaufman-cohen@usdoj.gov

Attorneys for Defendant
United States of America

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| STEVEN M. NELSON,<br><br>      Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, by and through the NATIONAL OCEANIC and ATMOSPHERIC ADMINISTRATION,<br><br>      Defendant | Case No.: 3:19-cv-01761-HZ<br><br>IN ADMIRALTY<br><br>UNITED STATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; OBJECTION TO THE DECLARATION OF STEVEN NELSON [LR 56-1(b)]<br><br>Date:  May 10, 2021<br>Time:  10:00 a.m.<br>Courtroom 15A<br>HON. MARCO A. HERNANDEZ |

## I.     INTRODUCTION

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), citing Fed.R.Civ.P. 1. A court shall grant summary judgment on a claim when the moving party establishes that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In cases tried to a jury, the court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir. 1999) (citation omitted). However, in a non-jury case, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *Jones v. United States*, 936 F.3d 318, 321–22 (5th Cir. 2019). As such, "[w]hen deciding a motion for summary judgment prior to a bench trial, the district court has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id*. Moreover:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, or, as is the case here, that delay under the circumstances proved is justified or unjustified, even if that conclusion is deemed "factual" or involves a "mixed question of fact and law." A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

*Nunez v. Superior Oil Co*., 572 F.2d 1119, 1123–24 (5th Cir. 1978). Furthermore:

> The fact that difficult questions of law exist or that the parties differ on the legal conclusions to be drawn from the facts is not in and of itself a ground for denying summary judgment inasmuch as refusing to grant the motion does not obviate the

court's obligation to make a difficult decision; a denial merely postpones coming to grips with the problem at the cost of engaging in a full-dress trial that is unnecessary for a just adjudication of the dispute. Therefore, when the only question is what legal conclusions are to be drawn from an established set of facts, the entry of a summary judgment usually should be directed.

10A Fed. Prac. & Proc. Civ. § 2725 (4th ed.)

In this case, the Court as the trier of fact has the evidence before it and the applicable law to determine that the United States did not breach its duty of reasonable care it owed plaintiff under section 905(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) (LHWCA).

## II.     DISCUSSION

The parties agree that the only limited duty of care the United States owed plaintiff was the active control duty. Under the active control duty a vessel owner must warn a ship repairman of any hazards on the ship or its equipment that are known to the vessel, or should have be known to it, in the exercise of reasonable care. *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 167 (1981).

In its opening brief the United States provided an in-depth analysis of a case with facts nearly identical to the facts of this case, *Reed v. ULS Corp.,* 178 F.3d 988, 992 (8th Cir. 1999). *Reed* was cited by the Ninth Circuit as an example of a shipowner's duty to inspect, *Murray v. S. Route Mar. SA*, 870 F.3d 915, 920 (9th Cir. 2017).[1] The United States will briefly revisit *Reed* here.

In *Reed,* a longshore worker was injured when a step on the gangway he was using collapsed. The step collapsed because two pins on the underside of the step were actually missing, a condition that would be apparent if one where to undertake a detailed inspection of the underside

---

[1] The United States notes that plaintiff's expert, Joseph Derie, presumptuously attempts to distinguish *Reed* from the case at bar. [ECF 25-3, 3:23-4:1]. It is entirely inappropriate for an expert to opine on case law and the Court should disregard Mr. Derie's proffered insights on *Reed*.

of the gangway. However, the Eighth Circuit found that the shipowner did not breach its duty of reasonable care it owed the longshore worker. In so doing, the court considered the following facts decisive:

    (1)    When the gangway was deployed it was visually inspected and walked to ensure it was in safe condition.

    (2)    During the hours before the step collapsed, the gangway had been in continuous use by crewmembers and other longshore workers with no problem.

    (3)    The shipowner conducted monthly inspections of the vessel, which included an inspection of the gangway.

    (4)    The monthly inspection of the gangway did not include an examination of the underside of the gangway.

With these factors in mind, the court in *Reed* held:

> Thus, in accordance with the holding of *Scindia*, plaintiff must show in the case at bar that in the exercise of reasonable care that ULS knew or should have known of the defective condition of the gangway step that failed. In this regard, Reed argues that ULS had an obligation in the exercise of reasonable care to inspect the underside of the gangway and that if ULS had done so it would have been able to detect a defective condition in the step. *The record reflects that the inspection of the gangway by ULS was reasonable under the circumstances here and that even if ULS had inspected the underside of the gangway it would not necessarily have determined that a defect existed.*

*Reed,* 178 F.3d at 990-992.

In another case, *Vadas v. J. Lauritzen Holdings*, 2000 WL 1827350 (D. Conn. 2000), a longshore worker was injured when a defective rung on a ladder he was using broke, causing him to fall. The longshore worker filed suit against the shipowner under section 905(b) of the LHWCA, alleging, *inter alia,* that the owner failed to properly inspect the ladder. In granting the shipowner's motion for summary judgment, the court held:

> In support of its motion, Lauritzen has provided ample evidence demonstrating that Vadas' injuries were not caused by Lauritzen's negligence. Specifically, Lauritzen has presented evidence indicating that the ladder was not defective, that Lauritzen routinely inspected the ladder, and that Lauritzen had no prior knowledge of any defect with the ladder. For example, Lauritzen has presented the affidavit testimony of the African Reefer's chief engineer to show that the vessel's cargo crane ladders were routinely inspected prior to arrival in port. The engineer further testified that the ladder from which Vadas fell was visually inspected prior to the accident and that there were no known problems with the ladder prior to the accident. He also testified that the ladder was in use for two hours prior to the accident by at least one longshoreman other than Vadas and by the engineer himself. Finally, Lauritzen cites Vadas' deposition testimony to show that Vadas visually inspected the ladder prior to the accident and found nothing wrong with it. Lauritzen has thus presented compelling evidence that it did not breach the "turnover" duty.

*Vadas*, at *2.

The Ninth Circuit has held that a shipowner's duty to inspect is, "constrained by what is reasonable under the circumstances. . . . The limited nature of the duty undercuts the vessel owner's fear that it will be obligated to scour every inch of the vessel and tear apart all of the equipment. Because the inquiry turns on reasonableness, our rule also does not resurrect the strict-liability unseaworthiness regime that Congress dismantled by passing § 905(b)." *Murray, supra* 870 F.3d at 920–21.

In this case, the United States has established the following undisputed facts:

(1)    The gangway had been in use aboard the ship since 2013 without any incident or indication that it was not fit for its intended use.[2]

(2)    Each time the gangway was deployed it was visually inspected and walked on to ensure that it was in a safe condition.

(3)    After the visual inspection and safety walk are completed a call was made to the bridge confirming that the gangway was secure and ready to be used.

---

[2]    Declaration of Captain Michael Levine in support of the United States' motion for summary judgement (ECF No. 17).

(4)  The ship maintained all required watches, which included walking the ship to identify any safety issues onboard the vessel or any safety issue concerning any appurtenance to the ship, including the gangway.[3]

(5)  Plaintiff himself used the gangway numerous times per day since commencing his work aboard the vessel several days before the incident. On none of those previous occasions was there any indication of a safety issue.

(6)  Throughout the days leading up to the incident, plaintiff witnessed numerous people using the gangway.[4]

(7)  The weld that failed was on the underside of the gangway.

(8)  The Chief Boatswain of the vessel, Ryan Harris, conducted annual inspections of the gangway. His inspections included an examination of the underside of the gangway, including the hinge plate. At no time did he see cracks in or around the welds on the hinge plate, or any other weld on the underside of the gangway.[5]

Plaintiff argues that the United States owed him a duty to go further than what the courts required in *Nelson, Reed* and *Vadas.* Plaintiff argues that the United States owed him a duty to conduct an in-depth inspection of the welds on the underside of the gangway each-and-every time it deployed the gangway. Plaintiff would also require the United States to employ an amorphous "qualified person" to inspect the welds on its gangways before deploying one. Requiring the Government to do so would go beyond the "maximum duty" of "reasonable care" a shipowner owes to longshore workers. *Bostrom v. Astro Crecido Cia, Nav. S.A.*, 477 F.2d 718, 721 (1st Cir.

---

[3] Declaration of Chief Boatswain Ryan Harris in support of the United States' motion for summary judgment (ECF No. 18).
[4] Deposition testimony of Steven Nelson, 24:15 - 25:18; 26:3-7 (ECF No. 16-1).
[5] Supplemental Declaration of Ryan Harris, ¶ 5, filed herewith.

1973), citing *West v. United States*, 361 U.S. 118, 123 (1959).

Moreover, plaintiff does not provide the Court with any legal analysis that would lead the Court to conclude that the United States breached its duty of reasonable care. Plaintiff simply provides a declaration of a retired Coast Guard Captain. However, Capt. Derie's declaration does not raise an issue of fact. His opinions actually support a finding that the United States met its burden of care even under what Capt. Derie deems the reasonable, customary and standard practice of the marine industry.

Captain Derie opines that, "It is reasonable, customary and standard practice in the marine industry to inspect a gangway each time before a crew deploys it." The United States fully agrees with this principle, and indeed, that is precisely what the crew of the OSCAR DYSON did each time the gangway was deployed. Capt. Derie continues to opine that, "It is customary and standard practice in the marine industry for crew members to inspect the welds in the gangway for cracks, especially on the underside of the gangway which support its structure. This includes inspecting of the hinge plate, which help to maintain the integrity of the gangway." This is exactly what Chief Boatswain Harris did on an annual basis. Thus, the United States met its burden of reasonable care even under Capt. Derie's opinion of what is customary and standard practice in the marine industry.

Captain Derie goes on to pronounce that a shipowner should conduct an operational load test of its gangways every five years. However, he gives no opinion as to how this would have identified the faulty weld. In this case, periodic load testing of the gangway at five-year intervals may not necessarily have revealed the presence of the defective weld, unless the crack in the weld had reached critical size to fail under the applied load at the time of testing.[6]

---

[6]    Supplemental Declaration of Rita Kirchhofer, ¶ 6, filed herewith.

Captain Derie's declaration does not raise an issue of fact to defeat the Government's motion. To the contrary, it establishes that the United States met its burden of reasonable care even under his opinion as to what is reasonable, customary and standard practice in the marine industry.

Plaintiff also relies on the declaration of Daniel Van Domelen in an attempt to defeat the United States' motion. However, Domelen's opinions are entirely speculative. Speculative testimony is insufficient to raise a genuine issue of fact and defeat summary judgment. *Colvin v. Young*, 2015 WL 1808900, *4 (W.D. Wash. 2015), citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 738 (9th Cir. 1979) (ruling that a conclusory and speculative affidavit did not defeat summary judgment because it "failed to set forth any specific facts within [the declarant's] personal knowledge").

Domelen opines that, "Under the circumstances that caused the collapse of the gangway with Steve Nelson on it, the welds that failed *probably had exterior cracks long before the gangway collapsed*."[7] This opinion, not least with its inclusion of the word "probably," is completely speculative, and is refuted by the testimony of Chief Bosun Harris, the *only* individual to have *actual knowledge* of the undisputed fact that no cracks were visible on the welds that failed prior to the collapse of the gangway. Domelen goes on to provide an admission that highlights his own speculation, stating, "*I cannot tell from the photographs exactly how long the fractures had been externally visible*. But *assuming* there was no overload of the gangway, *it is likely* they had been developing for months, if not years, before the welds failed."[8] Again, this is no more than speculation on his part, and is repudiated by Chief Bosun Harris, who visually inspected the welds

---

[7] Declaration of Daniel Van Domelen, ECF No. 25-4, 4:3-5, emphasis added.
[8] Domelen Declaration 25-4, 4:11-13, emphasis added.

on the underside of the gangway annually and who has testified - with firsthand percipient knowledge, not rank speculation - that he saw no cracks on the welds.

Domelen further opines that:

> Exhibit 3 to the Nelson declaration shows that the welds on both sides of the hinge plate failed. Cracks are visible in the weld in exhibit 7 to Mr. Nelson's declaration, and should have required repair of that weld. This supports my opinion that root fractures in welds gradually expand outward and are visible on inspection well before they fail. This same process would be expected with the welds which failed. The cracks would have been visible on inspection before October 24, 2017, when the vessel's crew should have inspected the gangway.[9]

This opinion is unreliable because it is based on photographs taken *after the weld ruptured and the gangway collapsed*. There is no way a person can determine whether the cracks visible in the photographs existed prior the collapse of the gangway or were the result of the catastrophic rupture of the weld and subsequent collapse of the gangway. Moreover, the features in the photographs may or may not even be cracks; the origins of such features are unknown and cannot be determined from the photographs.[10]

Domelen concludes by stating that he feels that the fractures in the welds would have been discovered if the gangway had been load tested upon fabrication and at intervals of at least five years. He bases this feeling on his belief that the welds "did not have had (sic) the capacity for which they were designed due to lack of penetration."[11] This belief is belied by the undisputed fact that the gangway had been in use aboard the OSCER DYSON for four years prior to its collapse, all without incident. Essentially, the gangway was load tested each time it was used. Hence, the gangway had the capacity it was designed for, up until the hidden defect in the weld

---

[9] Domelen Declaration, 25-4, 4:15-22.
[10] Supplemental Declaration of Rita Kirchhofer, ¶ 5.
[11] Domelen Declaration, 5:8-10.

caused the gangway to collapse. Additionally, as discussed above, periodic load testing of the gangway at five-year intervals may not necessarily have revealed the presence of the defective weld, unless the crack in the weld had reached critical size to fail under the applied load at the time of testing.

Plaintiff has the burden of proof. One the one hand, the United States has presented competent, unrebutted, percipient witness testimony as to what *actually* was witnessed and what actions *actually* were performed. On the other hand, plaintiff has proffered speculative, non-firsthand opinions that themselves even undercut their own speculation. Plaintiff has failed to carry the burden of proof that it is his to carry.

### III. OBJECTION TO DECLARATION OF STEVEN NELSON

Pursuant to LR 56-1(b) the United States hereby objects to the declaration of Steven Nelson filed in support of his opposition to the United States' motion for summary judgment on the grounds that he is not competent to render the opinions contained therein and he lacks personal knowledge of the alleged facts.

Fed. R. Civ. P. 56(c)(4) provides, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." See also, Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001).

Nelson's declaration relies solely on photographs he took after the gangway collapsed. He declares that the collapsed "occurred when the upper section of the gangway detached from the hinge plate, which attached the sections of the gangway before the gangway collapsed." Mr. Nelson is not a welding expert or an expert engineer. He has no training or personal knowledge to opine as to what caused the gangway to collapse. He further declares that, "The hinge plate is

a plate of aluminum running the width of the gangway that joined its two sections. The gangway is also aluminum. The weld to the lower section did not fail, but the welds from the hinge plate to the upper section of the gangway failed on each side." Again, Mr. Nelson is not an expert welder or engineer and therefore lacks the requisite training and skill to determine which welds failed and which welds did not. Mr. Nelson concludes:

> The jagged edges of the hinge plate show where the upper section of the gangway, which is in exhibit 3, pulled away and detached from the hinge plate. When I looked at the weld above the pin in exhibit 7, I saw multiple cracks in it showing that it was not solid and was in the process of failing. The photograph shows this with the black lines at the edge of the weld. I could tell this by looking at the weld. This weld did not fail at the time of my injury, but it showed cracks externally in the weld.

Mr. Nelson is not a qualified expert welder and lacks the requisite training to render an expert opinion as to the conditions of the welds. Moreover, the photograph attached as exhibit 7 to his declaration, and which he attempts to render an expert opinion, was taken after the collapse of the gangway. There is no way a person can determine whether the cracks visible in the photograph existed prior the collapse of the gangway or were the result of the catastrophic rupture of the weld and subsequent collapse of the gangway.

Mr. Nelson is not competent to render the opinions contained in his declaration and he lacks personal knowledge of the alleged facts set forth therein. Consequently, the United States objects to the declaration of Steven Nelson declaration.

## IV.    CONCLUSION

The United States has provided competent evidence and applicable legal authority for the Court, sitting as the trier off fact, to determine that it did not breach its limited duty of care it owed plaintiff under section 905(b) of the LHWCA.

| | |
|---|---|
| Dated: April 15, 2021 | RENATA GOWIE<br>Assistant United States Attorney<br>Chief, Civil Division<br>BRIAN M. BOYNTON<br>Acting Assistant Attorney General<br><br>R. MICHAEL UNDERHILL<br>Attorney in Charge, West Coast Office<br>Torts Branch, Civil Division<br><br><u>s/ Eric Kaufman-Cohen</u><br>ERIC KAUFMAN-COHEN<br>Assistant Attorney in Charge<br>West Coast Office<br>Torts Branch, Civil Division<br>U.S. Department of Justice<br><br>Attorneys for Defendant<br>United States of America |

CERTIFICATE OF SERVICE

I hereby certify that, on April 15, 2021, a true and correct copy of the foregoing UNITED STATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; OBJECTION TO THE DECLARATION OF STEVEN NELSON [LR 56-1(b)] was served electronically through CM/ECF on:

> Charles Robinowitz
> Law Offices of Charles Robinowitz
>
> Attorneys for Plaintiff
> Steven M. Nelson

>           /s/Eric Kaufman-Cohen
>           ERIC KAUFMAN-COHEN