IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN M. NELSON,  No. 3:19-cv-01761-HZ

        Plaintiff,  OPINION & ORDER

   v.

UNITED STATES OF AMERICA
*by and through the National Oceanic and Atmospheric Administration*,

        Defendant.

Charles Robinowitz
1211 SW Fifth Avenue
2323 Pacwest Center
Portland, OR 97204

   Attorney for Plaintiff

Eric Kaufman-Cohen
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
P.O. Box 36028
San Francisco, CA 94102

   Attorney for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff brings this negligence action against the United States of America, by and through the National Oceanic and Atmospheric Administration (NOAA). Defendant moves for summary judgment on Plaintiff's entire Complaint. For the reasons that follow, the Court denies Defendant's motion.

## BACKGROUND

Plaintiff is a diesel mechanic for Peterson Machinery. Nelson Decl. 1–2, ECF 25-2.[1] At the end of October 2017, Plaintiff began work on the diesel engines of the OSCAR DYSON. *Id.* at 2; Kaufman-Cohen Decl. Ex. A 21:17-25, ECF 16-1. The OSCAR DYSON is a public vessel owned by the United States, by and through the Department of Commerce, NOAA. Dolan Decl. ¶ 2, ECF 20. At the time, the OSCAR DYSON was moored at berth three at NOAA's dock in Newport, Oregon. Harris Decl. ¶ 2, ECF 18.

On November 2, 2017, the gangway collapsed as Plaintiff was disembarking the vessel. Nelson Decl. at 1. He fell 10 to 12 feet and injured his left arm and shoulder. *Id.* Two other Peterson Machinery employees were on the gangway when it collapsed. *Id.* at 2.

The parties agree that the gangway collapsed because of a faulty weld on the hinge plate attached to the underside of the gangway. Def. Mot. for Summ. J. at 8, ECF 15; Pl. Opp'n Mot. for Summ. J. at 2, ECF 25. The welds failed "due to lack of fusion and/or lack of penetration of the fillet weld joining two sections of the gangway." Kirchhofer Decl. ¶ 2, ECF 19; Van Domelen Decl. at 3 (agreeing with this analysis). The gangway had been in use for the preceding four years without incident. Levine Decl. ¶ 3, ECF 17.

---

[1] Plaintiff's declarations lack numbered paragraphs. Accordingly, the Court's citations are to the page numbers in declarations submitted by Plaintiff.

Defendant took the following measures to ensure the gangway was safe. The Chief Botswain of the OSCAR DYSON conducted annual inspections of the vessel's equipment, including the gangway. *Id.* ¶ 3; Supp. Harris Decl. ¶ 5, ECF 27. The annual inspections never revealed safety issues or cracks in or around the hinge plate or any other welds on the gangway. Harris Decl. ¶ 2–3; Supp. Harris Decl. ¶ 5. The gangway was visually inspected and walked on by a crewmember each time before it was used. Harris Decl. ¶ 2–3. Once these inspections were completed, a call was made to the bridge confirming that the gangway was secure and ready to be used. *Id.* ¶ 2. The gangway was visually inspected and walked on by a crewmember on the day of Plaintiff's accident. Harris Decl. ¶ 2. The vessel also conducted all required watches, including walking the vessel to identify safety issues with equipment on board. *Id.* ¶ 2. On the days leading up to the incident, Plaintiff, his co-workers, and the crew used the gangway numerous times without any indication of a safety issue. Kaufman-Cohen Decl. Ex. B 24:15-25:18, 26:3-7.

## EVIDENTIARY OBJECTIONS

Defendant objects to the declaration of Plaintiff Steven Nelson arguing that he is not competent to render the opinions in his declaration and lacks personal knowledge of the alleged facts. The Court does not rely on the portions of Plaintiff's declaration that Defendant objects to. Accordingly, the Court declines to rule on whether this evidence is admissible for proving Plaintiff's claims at this time

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

As a shore-based ship repairman, § 905(b) of the Longshore and Harbor Workers' Compensation Act (LHWCA) applies to Plaintiff's claim. 33 U.S.C. §§ 905(b). § 905(b) of the LHWCA does not define the duty of care owed to shore-based ship repairmen. In *Scindia Steam Navigation Co. v. De Los Santos*, the Supreme Court defined the three duties a vessel owner owes to ship repairmen: "the turnover duty, the active control duty, and the intervention duty." *Christensen v. Georgia-Pac. Corp.*, 279 F.3d 807, 812 (9th Cir. 2002) (citing *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 167, 175–76 (1981)). The parties agree that the active control duty is at issue here. The active control duty "provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'" *Howlett v. Birkdale Shipping Co.*, S.A., 512 U.S. 92, 98 (1994) (citation omitted); *Christensen*, 279 F.3d at 812 ("The active control duty requires the vessel owner to act reasonably if it actively participates in the cargo operations, and to avoid exposing the stevedores to harm from hazards they may encounter in areas, or from equipment, under the active control of the ship.").

Defendant does not dispute that the gangway was under "active control of the vessel." The question before the Court then is whether, when viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant exercised reasonable care in its maintenance and inspection of the gangway.

### A.    Visual Inspection

Plaintiff argues that Defendant's inspection was unreasonable because it did not identify external cracks in the welds before the gangway collapsed. Defendant submits that the faulty

5 – OPINION & ORDER

welds on the underside of the gangway were a hidden defect that could not have been discovered upon a reasonable inspection.

Defendant relies on the opinion of engineer Rita Kirchhofer to establish that visual inspection could not have revealed cracks in the welds. In her declaration, Ms. Kirchhofer asserts that the "lack of fusion and/or lack of penetration" would not have been detectable by visual inspection because "the weld cap hides the root area of the weld." Kirchhofer Decl. ¶ 2. She states that "it was not possible to visually detect the presence of a cracks [sic] growing from an internal weld discontinuity." *Id.* ¶ 3.

In response to Ms. Kirchhofer, Plaintiff proffered a declaration from his own expert Daniel Van Domelen, a welder and President of a maritime consulting firm. Van Domelen Decl. at 1–2, ECF 25-4. Mr. Van Domelen disagreed with Ms. Kirchhofer's conclusion that a visual inspection could not have identified the faulty welds. *Id.* at 3. He asserts that while a crack may not be visible "immediately after fabrication" a crack can become visually detectable externally "over the lifespan of a weld that has a root fracture." *Id.* He states that

> When a weld with a root fracture is under stress, the fracture expands over time. The stress will try to relieve itself through the path of least resistance. The typical path of least resistance is from the root to the exterior of the weld. Once a fracture has reached the exterior of the weld, it is detectable externally.

*Id.* Plaintiff also submits the declaration of Captain Joseph A. Derie II, a retired U.S. Coast Guard officer and marine engineer. According to Captain Derie II, the crew should have been able to easily see any cracks in the welds attaching the hinge plate to the sections of the gangway by visual inspection. Derie Decl. at 4. On summary judgment, Plaintiff's evidence creates a question of fact as to whether a reasonable visual inspection of the gangway should have revealed a defect in the welds.

//

6 – OPINION & ORDER

B.     Load Testing

Plaintiff argues that Defendant's inspection was not reasonable because it did not have the gangway load-tested every five years and did not have the gangway load-tested by the manufacturer before delivery. Defendant contends that load testing was not required.

Defendant submits the declaration of James L. Dolan, an engineer and President Emeritus of a marine consulting firm. According to Mr. Dolan, there is no custom or practice within the maritime industry that would have required NOAA to conduct an in-depth investigation of the gangway or conduct load testing. Dolan Decl. ¶ 5. He also states that domestic statutes and regulations did not require NOAA to load test the gangway. *Id.* ¶ 3.

Plaintiff's expert, Captain Derie II, states that it is safe custom and practice in the marine industry to load test gangways. Derie Decl. at 3. According to Captain Derie II, "an operational load test should be conducted every five years by a qualified, disinterested party." *Id.* at 2. He also noted that the manufacturer should not have released the gangway to the buyer until it was load tested and that the manufacturer should provide a load test certification upon delivery. *Id.* at 3.

Defendant responds that periodic load testing may not have revealed the presence of a faulty weld, "unless the cracks in the weld had reached critical size to fail under the applied load at the time of testing." Def. Reply at 7, ECF 26 (citing Kirchhofer Supp Decl. ¶ 6). Conjecture about whether load testing would have prevented the accident and the size of potential cracks does not establish that Defendant exercised reasonable care. Viewing the evidence in the light most favorable to Plaintiff, and drawing all inferences in his favor, he establishes that the standard of ordinary care among vessel owners requires periodic load testing of gangways.

7 – OPINION & ORDER

Defendant also argues that the facts of *Reed v. ULS Corp.*, 178 F.3d 988, 989 (8th Cir. 1999) control the outcome of this case. In *Reed*, the plaintiff fell while using the gangway when a step failed. *Id.* at 990. In that case, the defendant shipowner conducted monthly visual inspections of the gangway, inspected the gangway before it was used, and had a crewmember walk the gangway. *Id.* at 992. There was also no evidence that the defendant had notice of a potential problem with the gangway before the incident. *Id.* On these facts, the court concluded that the inspection of the gangway by the shipowner was reasonable for the shipping industry and affirmed the district court's grant of summary judgment for the defendant. *Id.*

The measures undertaken by the shipowner in *Reed* were very similar to the measures taken by Defendant in this case. In *Reed*, however, the plaintiff argued that the defendant had a duty to conduct a more detailed inspection without providing evidence that a more detailed inspection was warranted. *Id.* Here, Plaintiff submits evidence that creates a question of fact as to whether the ordinary standard of care among vessel owners requires load testing and whether Defendant's visual inspections were reasonable.

"Summary judgment is rarely granted in negligence cases because the issue of '[w]hether the defendant acted reasonably is ordinarily a question for the trier of fact." *Christensen*, 279 F.3d at 813. The Court finds that the conflicting declarations establish that material questions of fact remain. Whether Defendant's visual inspections of the gangway were reasonable and whether it was reasonable for Defendant not to conduct periodic load testing are questions of material fact reserved for trial. Accordingly, Defendant's Motion for Summary Judgment is denied.

//

//

## CONCLUSION

The Court DENIES Defendant's Motion for Summary Judgment [15].

IT IS SO ORDERED.

DATED:___August 4, 2021_____.

                                                        MARCO A. HERNÁNDEZ
                                                        United States District Judge