Charles Robinowitz, OSB No. 691497
M. Elizabeth Duncan, OSB No. 872092
Law Office of Charles Robinowitz
1211 SW Fifth Ave., Suite 2323
Telephone:  503-226-1464
Facsimile:   503-226-6456
Email:  chuck@crlawoffice.com
            elizabeth@crlawoffice.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION (3)

| | |
|---|---|
| STEVEN M. NELSON,<br><br>                        Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA, by and through the NATIONAL OCEANIC and ATMOSPHERIC ADMINISTRATION<br><br>                        Defendant. | No. 3:19-cv-01761-HZ<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 59(e)** |

**Certification under Local Rule 7-1**

Before filing this motion, plaintiff conferred with counsel for defendant, who opposes this motion.

Plaintiff moves this Court for reconsideration of its January 31, 2022

Page 1- PLAINITFF'S MOTION FOR RECONSIDERATION

Findings of Fact & Conclusions of Law. Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within 28 days after its entry. "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon,* 197 F.3d 1253, 1255 n. 1 (9th Cir.1999) (en banc). A Rule 59(e) motion may be granted where the court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice. *Id.; Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

In reaching its Findings of Fact & Conclusions of Law, the court overlooked certain critical facts and issues that resulted in clear error in the ultimate conclusions reached by the court and the erroneous judgment in favor of the defendant. The court should reconsider its decision to consider this critical evidence.

**1. Defendant never load tested the defective gangway before using it on the OSCAR DYSON**

The first critical issue that the court overlooked is that the defendant never load tested the defective gangway before first using it on the OSCAR DYSON. The defective gangway was a "second-hand" gangway, passed down to the OSCAR DYSON from another NOAA vessel, the MILLER FREEMAN, when it

Page 2- PLAINITFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

was decommissioned in the early 2010's. Michael Levine, the Commanding Officer of the OSCAR DYSON testified that no paperwork was transferred with the gangway and there was no plating on its surface stating essential information indicating its dimensions, weight, load capacity, name of manufacturer, and date of construction. Despite knowing nothing about this gangway's history or specifications, NOAA used it without first having it load tested to make certain it was a safe means of conveyance for people boarding and disembarking the OSCAR DYSON. By doing so, NOAA breached its reasonable duty of care owed to every person who used that gangway. Unfortunately for the plaintiff, he was the proverbial "final straw" that caused the gangway to break in half.

The evidence at trial was uncontroverted that a gangway should be load tested at the time it is manufactured, before it is delivered to a vessel, and its specifications, including its weight bearing capacity, should be documented and given to the vessel. The evidence was also uncontroverted that the OSCAR DYSON took possession of this gangway with no documentation of its load capacity, as evidenced by a load test, or any information on its history, prior use, or mishaps.

NOAA Fleet Inspector, Charles Fluke, confirmed that NOAA requires load tests from the gangway manufacturers and a ship should know the load capacity

Page 3- PLAINITFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

of the gangway when it takes possession of it. Defendant's expert maritime witness, James Dolan, agreed that safe custom and practice requires that a gangway be load tested before it is delivered to a vessel. Mr. Dolan added that if a gangway is delivered without documentation attesting to the load test and its weight bearing capacity, the customer should demand that paperwork. He also testified that it is safe custom and practice to load test a damaged gangway after it is repaired. When Mr. Dolan was asked if it would have been reasonable to have this gangway load tested upon delivery to the OSCAR DYSON, he responded, "I don't know what the MILLER FREEMAN looked like."

This raises the critical issue that the court failed to address. Did NOAA breach its reasonable duty of care to plaintiff by using this second-hand gangway when it had no documentation of where or when it was manufactured, did not know if it had ever been load tested, did not know its load capacity, and did not know if it was ever damaged when it was used by the decommissioned NOAA vessel, the MILLER FREEMAN?

On this record, the evidence was uncontroverted that no vessel should take possession of a new gangway without receiving paperwork from the manufacturer documenting its specifications and load capacity. Why should identical standards not apply when a vessel takes possession of a used gangway

Page 4- PLAINITFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

that is transferred with no documentation?

The court's opinion correctly cites the "active duty rule" that requires a vessel owner to undertake a reasonable inspection of the ship and its equipment to protect those using it. The evidence was undisputed that the welds fusing the hinge plate to the upper gangway were defective. This gangway would never have passed a proper load test. By putting an untested gangway into use without having it load tested, NOAA breached the undisputed standard of care in the maritime industry. All NOAA had to do to prevent the harm to plaintiff was to arrange for a company to load test this second-hand gangway. NOAA failed to take this simple, inexpensive precaution to make certain the gangway was safe for its intended purpose and, as a result, Steve Nelson's life is forever altered.

The court should reconsider its opinion to consider the issue of whether NOAA breached its duty of care by failing to load test the gangway when it first obtained it from the decommissioned MILLER FREEMAN. By using this second-hand gangway on the OSCAR DYSON without first load testing it, NOAA negligently failed to exercise the reasonable duty of care that it owed to Steve Nelson and every other person who walked on that gangway.

/ / / / /

/ / / / /

Page 5- PLAINITFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

**2. The court ignored a clear pattern of destruction of evidence that should have created an inference of the defendant's negligence.**

As soon as a potential claim is identified, a party has a duty to preserve evidence which it knows or reasonably should know is relevant to the action. Spoilation occurs when a party destroys, significantly alters, or fails to preserve evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). "This is an objective standard that asks not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus*, 645 F.3d 1311, 1320 (9th Cir. 2011). A party must suspend any policies related to deleting or destroying evidence and preserve all evidence related to the litigation. Where spoilation occurs, a court may issue a variety of sanctions as a remedy, including monetary sanctions, an adverse-inference jury instruction, exclusion of testimony, or default judgment. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). *In re Napster, Inc. v. Copyright Litig.*, 462 S. Supp 2d 1060, 1067 (N.D. Cal. 2006).

There was a blatant pattern of destruction of evidence on this record that the court ignored in reaching its decision. This spoliation of evidence and the

Page 6- PLAINITFF'S MOTION FOR RECONSIDERATION

credibility of Chief Boatswain Ryan Harris, who was at the center of the majority of the disappearing evidence, requires reconsideration by the court and demands that the court draws certain critical inferences in favor of the plaintiff.

The court ignored three important pieces of evidence that "disappeared" in this case. The first is the gangway itself. No one connected with the OSCAR DYSON knows what happened to the defective, broken gangway and hinge plate. Commanding Officer Michael Levine testified that immediately after the gangway's failure, it was removed to the side of the dock. Eventually, NOAA moved it to its scrapyard in Newport. From there, it simply vanished.

Commanding Officer Levine knew that Steve Nelson and his co-worker fell ten feet onto the cement dock when the gangway broke apart as they walked down it. NOAA knew that Steve Nelson was injured as a result. Commander Levine examined the broken hinge plate immediately after it broke and determined that the welds failed due to lack of penetration into the parent metal. Ex. 505. Despite this knowledge, Commander Levine did nothing to preserve the gangway as evidence. He testified that it was put to the side of the pier and later moved to the NOAA storage area in the marine center. At some point it was "scrapped." When Chief Boatswain Ryan Harris returned to the OSCAR DYSON in December 2017, he testified that the broken gangway was still on the dock. It was later moved

Page 7- PLAINITFF'S MOTION FOR RECONSIDERATION

to the "lay down yard" and eventually disappeared.

The disappearance of the gangway is important and creates an inference of negligence on the part of the defendant. The experts at trial agreed that the ability to physically examine the gangway would have helped them determine the existence of visible cracks and the degree of deterioration in the welds. But because the gangway had vanished, no expert was able to examine the welds and definitively state whether cracks were visible and the extent of deterioration.

Defendant's expert witness, Rita Kirchhofer, Ph.D. who specializes in failure analysis and metallurgy, testified that the welds broke because of lack of fusion and lack of penetration. But she could not say whether the cracks in the welds would have penetrated the weld surface and been visible before the gangway broke in half. Importantly, she added that being able to examine the gangway would have definitely helped her analysis.

Defendant's expert, James Dolan agreed that the welds on the gangway were definitely defective before it broke in half. In analyzing what caused the gangway to break, he asked for the specifications on the gangway but was told they were not available. He agreed that if the cracks photographed in exhibit 10 existed before the gangway's collapse, they should have been obvious from a visual inspection of the gangway. But the actual gangway was not available for Mr. Dolan to examine

Page 8- PLAINTIFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR 97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

and form any definite conclusions regarding the visibility to cracks before the gangway collapse.

The disappearance of the gangway severely hindered plaintiff's ability to prove his case. The court summarized the testimony of the two primary experts on the visibility of cracks in the welds and found that "Plaintiff has not carried his burden of proving that a defect in the weld on the hinge plate on the underside of the gangway could have been discovered upon a visual inspection." Opinion 3-4.

Plaintiff's welding expert, Dan Van Domelen, testified that it was highly probable that cracks were visible on inspection before the collapse. Dr. Kirchhofer's testimony was less definitive. She testified that the greater likelihood was that the cracks would not have been visible upon inspection, but she acknowledged that it was also possible that the cracks would be visible before the complete failure of the weld. Importantly, she admitted that being able to examine the actual gangway and failed welds would have helped her to reach a more definite conclusion.

It was error for this court to find that plaintiff failed to meet his burden of proof when the only definitive way to prove that cracks were apparent upon visual inspection of the gangway was to examine the actual gangway itself. No one from NOAA can explain what happened to the essential evidence plaintiff needed to

Page 9- PLAINITFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR 97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

prove its case. Without question, NOAA had a duty to preserve the broken gangway, and its disappearance should create a strong inference of NOAA's negligence.

Second, the defendant destroyed all evidence that it performed an inspection of the defective gangway when it was stored in the warehouse in Kodiak. Chief Boatswain Ryan Harris is at the center of the missing inspection records and questions surrounding this missing evidence raises questions about his credibility. The court ignored all this evidence.

It is worth remembering that Ryan Harris filed a false declaration with this court on defendant's motion for summary judgment. He claimed that he was the chief boatswain on the OSCAR DYSON when it arrived in Newport on October 24, 2017 and testified in detail about his inspection and deployment of the gangway when the ship docked in Newport. That declaration was totally false. Ryan Harris did not sail on the OSCAR DYSON from Kodiak to Newport. He hopped a flight across the country as soon as the OSCAR Dyson left Kodiak and was on a NOAA vessel on the Atlantic Ocean when the OSCAR DYSON docked in Newport. The fact that Ryan Harris did not remember his three-month transfer to the east coast was surprising. His commanding officer, Michael Levine testified that Ryan Harris' transfer was a "big deal." He could not remember another time

Page 10- PLAINITFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR 97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

when NOAA transferred Harris off the OSCAR DYSON to serve on another NOAA vessel.

Ryan Harris' account of how the gangway was inspected in the warehouse in Kodiak is also suspect. Mr. Harris testified that he completed an "in-depth" inspection of the gangway that involved taking it apart and lifting the separated pieces of the gangway with a forklift so that he could crawl underneath the forklift and carefully examine the gangway's underside.

Bruce Mokiao, whose perpetuation deposition was played at trial, assisted Harris during the warehouse inspection in Kodiak and gave a very different account. Mr. Mokiao testified that he lifted the gangway about five feet in the air by forklift as a single, "huge" 30-foot-long piece. When asked if Mr. Harris crawled underneath the gangway to inspect it closely, he responded, "No . . . it would be unsafe if he was underneath." Mr. Mokiao testified that Mr. Harris kept to the side of the raised gangway and crouched down to peer underneath it.

Ryan Harris' testimony concerning his inspection notes and reports must be viewed in light of his questionable credibility. Mr. Harris testified that his customary practice was to keep notebooks where he recorded notes of his activities as chief boatswain. He would have recorded the notes he made of his gangway inspection in Kodiak in the notebook. But he admitted that he threw

Page  11- PLAINITFF'S MOTION FOR RECONSIDERATION

away all of his notebooks when he left his position on the OSCAR DYSON in August 2021, nearly two years after this lawsuit was filed.

He further testified that he recorded the inspection on NOAA's computer on the OSCAR DYSON, but when the ship's computers were updated a few years later, all that data was erased. It is unimaginable that a government research vessel in 2017 would not employ computer back-up systems to prevent such an occurrence. But that was Mr. Harris' testimony. The more likely explanation is that any record of the inspection was deliberately erased by Mr. Harris or the gangway was never inspected in the first place, so no notes of any inspection were ever recorded on the computer. If Harris and Mokiao never actually inspected the gangway in Kodiak, that would explain the discrepancies in their accounts of how the inspection of this 30-foot-long gangway was accomplished.

Taken together, Ryan Harris' testimony of his destroyed inspection records (either intentional or accidental), colored by a blatantly false declaration, and the inconsistent accounts of the gangway inspection should have created an inference that NOAA never inspected the gangway before it sailed for Newport in October 2017. The court's opinion ignored Ryan Harris' questionable credibility and the spoilation issue surrounding his conduct. It also failed to apply a resulting inference of defendant's negligence.

Page 12- PLAINITFF'S MOTION FOR RECONSIDERATION

# CONCLUSION

Gangways do not just break in half without some form of negligence. The defendant had sole control over the gangway. This gangway broke in half because of NOAA's negligence in failing to exercise the reasonable care it owed to every person who used that gangway. The fact that NOAA destroyed critical evidence, when it knew of plaintiff's injury, should result in inferences against the defendant on the issue of negligence.

For all of these reasons, the court should reconsider its findings of fact and conclusions of law and amend its judgment in favor of plaintiff.

Respectfully submitted this 16th day of March, 2022.

*s/ M. Elizabeth Duncan*
M. ELIZABETH DUNCAN, OSB #872092
CHARLES ROBINOWITZ, OSB #691497
Law Office of Charles Robinowitz
Attorneys for Plaintiff

Page 13- PLAINITFF'S MOTION FOR RECONSIDERATION

LAW OFFICE OF CHARLES ROBINOWITZ
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
CHUCK@CRLAWOFFICE.COM

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 16, 2022, a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR RECONSIDERATION was served electronically through CM/ECF on:

ERIC KAUFMAN-COHEN
Assistant Attorney in Charge
West Coast Office
Aviation, Space & Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 36028
450 Golden Gate Avenue, Room 7-5395
San Francisco, California 94102-3463
E-mail: eric.kaufman-cohen@usdoj.gov
   Attorney for Defendant

*s/ M. Elizabeth Duncan*
M. ELIZABETH DUNCAN, OSB #872092
Law Office of Charles Robinowitz
Attorneys for Plaintiff

Page 1 – CERTIFICATE OF SERVICE

LAW OFFICE OF
**CHARLES ROBINOWITZ**
1211 S.W. FIFTH AVENUE, SUITE 2323
PORTLAND, OR  97204-3711
(503) 226-1464 FAX: (503) 226-6456
chuck@crlawoffice.com